I wonder if the lawyers who were going to orally argue would both step up and identify yourselves for the record. Good afternoon, Your Honor. My name is Rick Godfrey on behalf of Petitioner Appellant J.M. Mr. Godfrey, good afternoon. My name is the Court Department, Kirkconian. Kirkconian. Yes. Good afternoon, Mr. Kirkconian. You each have 15 minutes. Mr. Godfrey, you can save out from your 15 any portion you wish for a response. I'd like to save five minutes if I might, Your Honor. Very well. Thank you. You may proceed. May it please the Court, my name is Rick Godfrey. As you know, I represent J.M. Petitioner Appellant. She's a young woman who unsuccessfully sought the law's help under the Civil No Contact Order statute. The basic facts are not reasonably disputed. There may be disputes about some facts, but the basic facts are not in dispute. She went to a wine mess at the University of Chicago. You're saying the facts are not in dispute? Yes, I'm going to identify the facts which are not essentially in dispute. Oh, you're going to identify those that are not in dispute. You're suggesting that there may be some that are. Immaterial facts in our judgment, but we'll get to that. Immaterial, did you say? Not material. Immaterial. Those are in dispute, but the material facts are not? From where we stand. All right. She went to a wine mess, consumed a fair number of beers. How many a fair number of beers? Twelve is the record testimony. By whom? By herself and her friends. How many people testified to twelve? The testimony came from Julian, David, and from the respondent, and it was an approximation. And I think the record at one point said ten to twelve, but there's a fair number. There were three people who used that number? No, three people said that she was intoxicated. The numbers varied slightly. Okay. She went there. Afterwards, she ended up with a respondent. She went to a bathroom then. She started to leave with two of the friends, Julian and David. Went to the bathroom at the University of Chicago Lab School. Was quite upset. Was in the bathroom for some period of time. The record is not clear as to whether it's three hours, which some thought, or a lesser period of time, but some period of time. During that time, her mother called. She said she was with friends. That three-hour period where she's in the bathroom? Yes. Out of contact with anyone? Her friends were outside. She was visibly upset, according to the testimony. Subsequent to that, this was at what hour approximately, do you recall? Around ten o'clock. From about ten then until one? No, from about seven until ten. Seven until ten. Right. Okay. There's an intervening step where she went to the pub with them to have some, apparently two more beers. She then went to the University of Chicago. The testimony, though, is from her friends and herself that she was intoxicated. That's the point I'm getting to. She gets a call from a respondent, Mr. Briseno, around 11 o'clock. She does not remember how he has the number. Her friends testified that there was an exchange of numbers, and presumably that's how she got it. He comes to the University of Chicago, picks her up, takes her, and after that there are some disputes. But there's no dispute after that. The only testimony in the record is she says she's at home in her apartment with him. Sometime in the early morning hours, around three o'clock or so, she wakes up. He is sexually penetrating her. She says no, she doesn't want to do that. She's a Catholic girl who goes to church. She passes out in unconsciousness. She wakes up the next morning. Was there testimony that she gave that before she got to her apartment that she remembers being in some odd place or something? Yes, there's testimony that she remembers. She does not know where. She says there's pornography on a TV screen on the wall. She doesn't know where that is. She thinks that the respondent gave her two beers. So those are, I think, facts that even the district court judge did not find particularly in dispute. So what is it that's important here? Because let's face it, the circuit court judge says she struggled with this. She was very candid in what she said. I've read her remarks several times. Yes, she struggled with this. And the reason she struggled with it, we submit, is that she applied, although she said she was applying the preponderance of the evidence standard, she applied the wrong standard of proof. Well, did she apply the wrong standard of proof, or do you think that she applied the wrong standard of proof? She never mentioned words about reasonable doubt or anything like that. No, she didn't. But it's what she said in evaluating the evidence that reflects the application of the improper standard of proof. That statute requires that the petitioner only prove two things, nonconsensual sexual penetration. All right. The only evidence in the record on those two points. Let me interrupt you with a question. Sure. The standard of review is going to be significant here, I think. Now, you argue that this should be a de novo standard of review. Is that right? That's correct. All right. And is that because you believe that there aren't factual questions here, that this is really a question of statutory interpretation? Yes. The way that she evaluated, Judge Kirby evaluated the evidence, and what she said rewrote the statute. Do you think you prevail under a manifest weight, or do you insist that this has to be a de novo review in order for you to prevail? I prevail under either. Did you argue manifest weight? Yes. That it was either standard? Yes. You'd prefer a de novo standard because ultimately what you're telling us or what you would like us to believe, which I think we almost have to tease out of this judge's remarks rather than see that they're flat out there, is that she believed, the trial judge believed, that intoxication couldn't be a defense. Yes. I strike that intoxication couldn't be a defense, that there could be consent even though there was intoxication. Yes, because otherwise why would you require affirmative testimony that she's too drunk to consent at the time of the act when the evidence is fairly clear? Well, the judge didn't control the testimony. Of course not. But when the judge is faulting the evidence or proof, you do not even get to the intoxication issue unless you believe there was consent first but legally incapable of giving it because you were intoxicated. But let's go back to the fundamental problem with the standard of proof and the elements of the claim. There are only two elements that the petitioner had the proof, nonconsensual sexual penetration. The only evidence in the record was from her. And she said, I didn't consent. But the judge, I think some of what the judge said is based on credibility. Yes. But her opinion suggests that she found some of the testimony incredible. Yes. But. And I'm just pointing out some things as I see it, that she made a, she concluded that, she said, you probably consented. More likely than not was your phrase. You haven't shown to me nonconsent. The evidence doesn't establish nonconsent. In fact, she concluded, it established that you probably consented. Yes, Justice McBride, you correctly. I'm saying what I remember her saying. Precisely. And so then the question becomes, what was the evidence supporting the circuit court judge's conclusion that more likely than not. She consented. She consented. And the answer to that is zero. Well, because the respondent didn't testify, there was no cross-examination on whether she consented or not. And so you are left with an evidentiary back. And so now you come down to whether or not cases like the. You know, whether he testified or not, really, I don't know that that's going to, you know, matter here. Because either way, the standard, the burden of proof is always with, you know, the petitioner, not with some respondent. That's true. But let me summarize the evidence on the consent issue. You know, before you do that, I have two questions that I would like. Yes, sir. One of them is you keep talking about sexual penetration, but doesn't the statute say sexual conduct or penetration? Yes, it does. And I think sexual penetration. And you're basing everything on penetration here. No, that's what happened here. I mean, there's sexual conduct, clearly. But sexual penetration is, I think, the ultimate sexual conduct. Well, when you say that's what happened here, you know, only the people who are there knows what happened here. What we go by is what the evidence shows as to what happened. Yes, and what ultimately happened will be what the Lord knows and what the people know. But that's where it is. All right. I wanted to get that. So let me answer your question perhaps a little differently because you put your finger on a fundamental error in the court below, and I want to identify this clearly. There used to be, incorrectly, because the Illinois Supreme Court and other courts have rejected it, there used to be the theory that a woman's testimony alone, that it was nonconsexual sexual penetration, wasn't enough. That's not the law. I think Judge Kirby knew that, too. The thing I find somewhat disingenuous about the briefing in this case is that you suggest the trial judge didn't understand the law. Now, let me just read to you what she said on the record. The ultimate question for her, this is the trial judge, her, this is how she framed the issue, comes down to whether there was consensual sex or not. Okay? Yes. It hasn't got anything to do right at the moment as to whether or not she was too intoxicated so that the consent issue wouldn't even be an issue. Okay? Right. Because we're assuming that if she was too intoxicated, she couldn't consent. That's correct. But I don't think that's the way Judge Kirby saw the evidence. She saw the evidence of a lot of drinking, but the question became for her, was she so intoxicated as to make the issue of consent irrelevant? I think that's where you're headed, in which case she misinterpreted the law, and it's a de novo review because the statute clearly provides that intoxication is such that it takes the issue of consent off the table. That's the second half of our argument. Okay. How do you get over this problem that she says, was it consensual or not? Do you agree to that part? She said it, but there's no evidence that it was consensual. Well, then she proceeds on for the next four or five paragraphs to delineate those discrepancies in the petitioner's testimony. Okay? Yes. She admits to drinking 13 beers. She admits that she left with the respondents even though her two friends were waiting for her. She finds that somewhat difficult to comprehend, apparently. She admits she does not remember falling in the street on two occasions on the way to the law school. She admits that there are some periods of time when she does not remember anything. She admits that some events were told to her. She admits that she could not remember the location of where she was after first leaving her apartment on the 16th, and that that location was subsequently told to her by her attorneys. This goes on for another page and a half, but the critical part of the judge's conclusion, it seems to me, is contained, and it's in your brief. Yes. At A10, page 34 of the record, she was impeached with her deposition testimony when she answered that she stayed in the apartment the entire day on the 16th. She admits that the statement in paragraph 6 of the petition is inconsistent with her testimony at trial. Now, what does this sound to you like a judge? Is this a judge who is reviewing the law, or is she reviewing the credibility of the witness? She's reviewing the credibility of the witness, but not on the issue at hand. Okay. The issue at hand is where is the impeachment on the sexual penetration or lack of consent? Well, the impeachment is because the judge has a very, very difficult time with the credibility of the witness because she says that. She says, I don't know if you have an accurate independent recollection of the events. Your memory is too shaky and unreliable. I have concerns about the credibility of your testimony. This case is so hard for me. I have thought about it every way humanly possible. I know you didn't want this to happen. I don't know if you are recreating events after the fact. I simply don't know. I don't know if you are testifying about things that were told to you or suggested to you. The question is? This is the trier effect. I appreciate that. And the question is? I have many concerns about your memory. I've read this many times myself. I was not involved in the court below. I don't know if that would happen. I think it is more likely than not that you consented. End of story. That's the judge's conclusion. You're saying that she based it on an improper interpretation of the law. Yes, and the reason I say that is this is not that long a record. I've read the entire record. Where is the evidence, the affirmative evidence, that she consented? It doesn't exist. So the only way you get there. Did the judge find? I mean, I've read this too. You tell me. Did the judge find that she consented to penetration? Does the judge say that anywhere? No, she doesn't say that. Does the judge find there was penetration? The judge raises questions because there's a lack of corroborative medical evidence. But the only testimony in the record comes from the victim, and that victim's testimony stands unrebutted. Is it possible that this judge did not find that you established penetration? I think that would be impossible on this record. I don't know. It appears confusing on the record. Is it possible that she said that she concluded that there was consent to whatever did happen, which isn't clear to her what happened? Is that possible? The judge's language speaks for itself. If you go to page 36, I don't know if that happened. I think it is more likely than not that you consented. Yeah, but wait. Now, there's a problem. There's nothing in here about what it was that actually happened. The judge doesn't say. I don't know if that happened. I don't know what she's saying she consented to. So, fair enough. If that's correct. Okay. Well, here, let's get back to something else. Penetration or conduct. Do you argue that this could have, at a minimum, have been that you established sexual conduct? Did you argue that? Clearly, it was sexual conduct, but the point was that it was sexual penetration. Okay, but did you argue alternatively that, at a minimum, it was established by preponderance of the evidence that there was sexual conduct based on what was the testimony and then the note? I don't think our brief spelled out sexual conduct. Well, the case was tried on basically penetration.  Okay, sure. It seems to me that that's how the case was passed. Well, I know, but Justice Gordon pointed out that there's alternative bases in the statute. There could be alternative bases, Your Honor, but it seems to me that penetration is the ultimate violation in the sexual conduct sense. It's not consensual. But the point you just made, I think, confirms the error below. If the court did not find that she consented or what she consented to, the only evidence in this record, unimpeached, unattacked, is she did not consent. And look at the subsequent corroborating events, because I think this is not unimportant. That evidence, though, comes out of her mouth, of course. And what the trial judge did, the trial judge was aware of it. The fact that she testified unequivocally, I was raped. That's in the record. That's right. But then she recounts, the judge does, in her summary of the evidence that she heard, a series of contradictions in that witness's testimony. Ba-dup, ba-dup, ba-dup, ba-dup, ba-dup. And basically concludes, as I read the record, I don't believe you. Based on all of these contradictory statements in the record. That is correct. I don't believe you. And I think the only thing I can conclude is that you consented. And the judge also says, I don't know if you are testifying about things that were told to you or suggested to you. I read this. I have this. You've also read her deposition. Yes. My problem with this is as follows. Unless this court thinks that the, let's put it this way. I'm just trying to put us in our proper standard of review. This thing really turns on standard of review, it seems to me. We either accept your provision that this is so against the manifest way to the evidence as to amount to abusive discretion. Okay. That her finding that she was not credible as the witness is an abusive discretion because the manifest way to the evidence clearly makes her a credible witness. I don't think you can argue that way. Or, more likely, more likely, she misinterpreted what was required under the law. That's our point. Which would make it a de novo standard. That is our point. Plus manifest. I know you're not going to back off either of those standards. No, I'm not. But what you don't want is abusive discretion. Guaranteed. Not going there. Okay. But I want this court to focus on this problem. There are cases from the Supreme Court on down, people versus Brown, Baker-Brown versus Baker, okay? The Illinois Department of Revenue case. The court, there's a difference between saying, I don't believe everything you say versus I'm going to now fill a gap in the evidence. There is no evidentiary gap filler on the issue of consent or penetration. There's a very able amicus brief filed in this case as well, which, of course, takes your position as well, rather very forcefully. What concerns me is that as forceful and as eloquent as your briefing is, is this case the kind of case you want to stand as a model for the no-contact statute? Where you have a trial judge, you have a trial judge on the record saying, I don't, you know, this is a conflict in the evidence. This is a conflict in the evidence. This is a conflict in the evidence. This is a conflict in the evidence. I can't find by a preponderance of the evidence when your key witness has been impeached on so many different points. Did the judge err in your opinion by not concluding that this woman was so intoxicated that she could not consent? No, she erred by the gratuitous finding that to prove lack of consent due to intoxication and incapability, she didn't testify, I was too drunk, even though she testified before at earlier points. But couldn't you argue that this was manifestly against the weight of the evidence and that it was that she was intoxicated so that she could not consent? Of course, but here's the problem. You don't even get there. This woman at 3 or 4 in the morning wakes up and says, hey, no, I don't want to do this. And what is the basis to reject that testimony? You know, Judge Posner has an opinion in Seventh Circuit. The Watkins v. Malloy case, we think it's squarely on point. You cannot reject the unrebutted testimony on the material issues at hand. Now, that predates Judge Posner. That goes all the way back to Judge Giganti and Bucktown Partners, and there might have been a better case for you to select rather than Posner's. Well, we've selected the Brown v. Baker case. It's a perfectly valid point to make. You're absolutely right. That's clearly the law of the world. But is this one of those unrebutted? The unrebutted impeach testimony. Is this the kind of witness that stands out in those cases? Some of these cases there was similar evidence about impeachment, but the courts found that it was not material. I mean, let's face facts. This woman was raped. That's what she says. And the next day, the fact that she can't remember everything in detail when she's in trauma, going to the hospital. Because let's look at some undisputed facts that are inconsistent with the notion that it was consensual. She tells her friends, embarrassing to be sure. She goes to the hospital. She has an invasive medical procedure. She goes through four weeks of medication. Part of the judge's concern about her testimony was that, in some ways, she wasn't sure whether this was something that the petitioner. One of the things the judge said was, I'm not sure that some of the memories of this that you have aren't from others. Wasn't it her friend that called the dean of the law school? Alex called the dean of the law school. It wasn't the dean of the law school. I think it was the dean of student affairs or something like that, Dean Cantor. But when she first talked to David, she eventually told him she thinks she was raped. Yes. She mentioned this to one of the officers. She said, I was raped. Yes. She talks to an officer. She says she said no. Look, it's a traumatic event. Minor inconsequential impeachment, not going to the material issue of consent. Well, the trial judge clearly did not think it was minor impeachment. But the trial judge had to presume consent. One of our errors of interpretation is the statute requires Jay Young to prove two things, right? Non-consensual sexual penetration. Respondent doesn't take the stand, so we don't have anything to weigh with his evidence. So she testifies to that. If you don't presume consent, how do you conclude, as the trial judge does, that it was more likely than not that she consented? What is the basis? Whether that's manifest weight of the evidence, because there is no evidence to weigh there, or whether that is simply the misapplication of a standard of law because you are presuming consent, like they used to do. Or is it that the judge inartfully said that the petitioner had not established non-consent? She didn't say that. That would be a misagreement. Well, I'm saying that if you read her findings, I think your opponent could argue that what she found was that the petitioner had not established by a preponderance of non-consensual penetration. And that would disregard her testimony, which is the only evidence of record. One point before I sit down. Okay. You're going to get another bite at this after your opponent has spoken. If the court below had wanted to apply the jury instruction rule known as falsus unius, false in part, false in whole, it could have done so. It did not do so. It said she was not a liar. It had the option of saying these are material, factual inconsistencies, and under the Latin phrase from Roman times, falsus unius, which is in the jury instruction, which is part of a case we cited to you, I find you are not believable. But she chose not to do so. Well, everything is in context. She's got a courtroom full of people, including the victim and her victim's allies, and she's got to be circumspect in the way she addresses some of the issues. She may have not said it as forcefully as you think she should have said it in order to prove it. Is it your position, though, basically, let's assume that we agree that this is a manifest weight standard, not the notebook, but let's assume that, and I'm just throwing that out. Is it your position that in any proceeding where the burden is by a preponderance, that the court must find in favor of the proponent because the proponent testified to a fact? Obviously not. That position is where there's no contrary evidence to come into play. That doesn't mean that there can't be contrary circumstantial evidence. That the court is bound to believe whatever it hears. Unless the court concludes that the victim on the material issues, material issues at hand, has lied. Lied? No, that's not the judge. Or not believable. The judge did not find that. The judge did not find her to be a liar. She said that. That is not the end of the inquiry. Well, it's not. I don't think she was in any way suggesting the woman. The petitioner was lying. That's not what she was suggesting. I'm trying to pierce at the bottom line is what you're saying is that so long as the witness testifies, the court has to enter judgment in favor of the proponent. If there is no contrary evidence and unless it is expressly found that that evidence is not credible. I think the version of the facts you're saying they still have to find in favor of the proponent. No, because that's not what happened here. Disbelief of certain facts, but the facts that are not challenged are consent, there's no impeachment of consent, and there's no impeachment of sexual penetration. And to say from that, I not only don't believe you, but right away I'm not saying on the record, I'm going to conclude that you more likely than not consented, from which there's no evidence on the record, and the negative inferences I'm drawing won't go to those two issues. That is not a proper weighing of the evidence under the standards of this statute. Okay. Thank you. I just have one little question. Procedural question. Yes, sir. It's a yes or no answer. At the end of the petitioner's case, did the respondent make a motion for a directed finding? If you know.  I must say I've read the record. I don't recall seeing that, but I won't, I don't know the answer to that question for certain. Okay. Thank you. Thank you, Mr. Gottfried. You'll be given an opportunity to respond. Mr. Kirkconian. May it please the Court. Karnak on behalf of the Court. Mr. Kirkconian, could you answer that question? Do you know at the end of the petitioner's case whether the respondent made a motion for a directed finding? I believe they did, Your Honor. They did? I believe they did, yeah. And it was denied. Quick reference. I believe it was obviously denied. All right. I think my opponent wants desperately to make positive law. I don't think he was desperate. Wants to make positive law in the statute. I just don't believe that this case is simply not the proper vehicle for it. Why? Well, there are factual vacuums. There's clearly impeachment. There is uncorroborated, inconsistent, internally inconsistent and contradictory testimony on virtually every element, every material issue in the record prior. Who contradicted at any time that she did not want to have any sexual contact with this other respondent? She said, I don't want to do this. What is there to contradict that? I think what the court was looking for, Your Honor, is behavior consistent with the allegations and statements that she made. That the court did not find. The petitioner in this case makes a large issue of the fact that the respondent didn't testify. And because the respondent didn't testify, we have to take what the petitioner says at soul and true value. Unfortunately, the court didn't agree with that. The court looked at the behavior and the factual behavior of the petitioner prior to the alleged incident and then thereafter and concluded that the facts leading up to them were inconsistent. Her own testimony regarding where she was, who she left with, when she left, and thereafter, her behavior after the alleged incident the entire next day was also inconsistent with the allegations that she made regarding the incident. Yeah, but was it so inconsistent because she was drunk and couldn't remember? Well, she seemed to remember other things, Justice, and I think that one of the things that she, for example, when she was in the library, she remembered pretty particularly her conversation with her mother on the phone when she said that she was fine and she was with friends. The subsequent conversation with respondents, she doesn't recall anything about. I mean, does a person who's drunk remember some things and not other things? Isn't that what drunk is? Well, that very well could be, Your Honor, but I think that the facts here show that she remembered certain things conveniently and other things. For example, when she was at Winemess at 4 p.m. in the afternoon, she recalls the respondent lurking, and those are her words, a pretty descriptive term, lurking around the foosball table. The testimony of her friends indicates that, in fact, she was playing foosball with her and with the entire group. As they walked over to the pub, she doesn't recall a respondent walking with them. In fact, her friends indicate that not only was the respondent walking with them as a group together to the pub, but there was also an exchange of phone numbers there. Do you agree that if she was intoxicated that she couldn't consent? I think that the law is pretty clear on if she was intoxicated at the time of the event. I think that that's clear, Your Honor, yes. Okay, and do you think that this record supports that she was not intoxicated at that particular time? What time in the morning would you pinpoint this to be? I would pinpoint this sometime between 4 a.m., the alleged incident, and 6 a.m., and the reason I do that is that there is testimony from Ben Burry that he received text messages from her sometime between 3 a.m. and 6 a.m. that she was at some other place, some strange place, in her words, which incidentally is a fact that she says it's an image that came to her at trial and had not come to her during deposition. It is a pretty material fact as to where she is prior to the incident. So I would place this sometime between 4 a.m. and 6 p.m. And is it your understanding that the record supports that she weighed about 100 pounds? I didn't see that. Well, it's in the briefs. I saw that. And that she consumed about 12 beers. I think that the amount of consumption, Your Honor, I think is... Is hazy? I think it is hazy. I think it's based on conjecture, based on the rules of the game. They laid out, the petitioner and the friends of the petitioner laid out the rules of the game at the pub. When they get to the pub, it's clear that Julian, who was supposed to be keeping track of the competition, was not even paying attention. That was his testimony. He was not paying attention to how much she was drinking. She may have continued drinking, but he doesn't know that. And I think that from the very beginning, the amount of alcohol that she consumed is based on conjecture and the rules of the game. And we know that the person who won the game, Julian, was at the pub at around... At the library around 10 o'clock. David testifies affirmatively that he was feeling absolutely fine at that point. Julian testifies that he... That he had testified... David testified earlier that Julian was unable to type if he had more than two beers, but he had no problem maneuvering with his cell phone in order to order coffee or food or whatever it was that he was ordering at the library. What's interesting is that the court made note of the fact that the testimony was from David and Julian that she was going in and out of two bathrooms, not one. That she went up the stairs and down the stairs, went in the bathroom. And they were just basically waiting there for three hours for her. Is that right? That's what I see on the record. Because she was supposed to go home with them. Well, there was definitely... But that was part of the plan. There was definitely an argument that... For about three hours, she was in the bathrooms at the law school. Yes, I believe that's true. What do you take from the judge's statement that I find that you probably consented? Where did this consent come from? I think that comes from the judge interpreting the burden, Your Honor, and saying that she did not prove non-consent. I think it's very hard to argue. What did she consent to? Anyway, do you think it's... Does she ever indicate this is consent to penetration or something? I don't think that there is... The only evidence that we have, Your Honor, that the petitioner has is her testimony, which the court clearly didn't believe. And the note, which the court believed was, quote, very equivocal. And going back to one of the points earlier that was made with respect to the respondent not testifying, there were significant negative inferences drawn on the fact that the respondent didn't testify. The court inferred that he, in fact, wrote the note. She never testified that he wrote the note. Testified that he left the note there. She never saw him leave the note there. That he was even there. These are significant inferences to draw in this type of situation, especially given the fact that at trial she recalls being someplace else, this strange place that she didn't recall in her testimony, in her deposition, and she recalls being at this strange place with some unscrupulous guy and doesn't identify the respondent as being that unscrupulous guy, nor does she text Ben Bury the fact that it is the respondent that she is with. So I believe that it's disingenuous to say there were no negative inferences. There are negative inferences made by the court with the respondent not testifying. With respect to the... Go ahead. There's this discussion of allocation of risk of error in the opening brief. And I thought long and hard about this phrase, allocation of risk of error. And I think reviewing what an allocation of the risk of error, no matter how we slice it, is an issue with respect to the weighing of the evidence. They're arguing that the overwhelming evidence was in favor of finding for the petitioner, that the judge allocated the risk of error. The burdens are clear. If the petitioner fails to meet the burden, a 50-50 split goes against the petitioner, not in favor of the petitioner. An allocation of risk of error, I believe, should be interpreted as a quaint term that really is an attempt to put us into the de novo standard in a situation that is really fact-intensive. I think that the court, in reviewing the trial court's opinion, identifies many instances in which the court is weighing the credibility of the evidence. And we can't, at the appellate level, we can't take away the province of the trial court to weigh that evidence. There are three things in the best case, best versus best, identifies that there are three things that the reviewing court will now substitute its judgment for. One is the credibility of the witness, which is clearly the case here. The other is the weight to be given to the evidence. And the third is the inferences to be drawn and how much inference to draw from. And I think that the court obviously struggled with the issue, struggled with the case, but based on the facts before it, I think made an intelligent and wise decision based on the evidentiary record. But, you know, usually in these credibility cases that you're talking about, there's two sides to it. That's how you decide credibility. Here, there's only really one side. You're right, Justice, and I think there's one side that has internal inconsistencies. There is one side that is down to the issue of what she told the police officer, Officer Gallagher, and then what she said at trial. There were inconsistencies, and I can, you know. Well, when a person is drunk, aren't they inconsistent? They may be, Your Honor. They may be. But the issue here is the fact that some of these statements were very early on in the afternoon. There are, well, and there's the other issue as well. The evidence, the only uncorroborated evidence of, sorry, the only corroborated evidence that the petitioner drinking ends at 930 at the very best at the pub. There is no other evidence other than from a petitioner that she continued drinking beyond that. Yeah, if she had 12 beers between 4 in the afternoon and 9 in the evening, if she actually consumed that many beers and she weighs 100 pounds, I don't think anybody out here is going to say that at 4 in the morning she was, that the alcohol had metabolized in her body so that she was no longer intoxicated. Well, Your Honor. I don't know. I mean, I. Well, I think that the petitioner could have very easily offered evidence to that. They make a claim in their reply that that would have been a duly burdensome financial investment into the case to be able to do that. But they also could have asked for the court to take judicial notice of some rate of dissipation. These are scientific facts that could have been taken into consideration. The problem here is that they also don't identify the specific time. You know, the counsel argued that it was 3 a.m. It's clearly not 3 a.m. because at 3 a.m., sometime between 3 a.m. and 6 a.m., she's receiving text messages. She's sending text messages to Ben Burry that she is at a strange place, a strange place that didn't exist in her deposition. It just came to her, quote, as an image at trial. So the burden does rest with the petitioner in order to establish the time of the incident, especially if we're dealing with a rate of dissipation for the alcohol. I think that the court was weighing this with the civil burden. We're not asking for the court to impose a burden that is beyond what is applied in any civil case, is that the petitioner meet her burden. And in this situation, the petitioner is unable to meet her burden, unable to put forth evidence, credible evidence, credible evidence of the fact of establishing the elements of the required under the statute, then the petitioner. How do you respond to Mr. Godfrey's suggestion that if the petitioner says that I didn't consent or I did not agree to this penetration, that the trial court then must accept that and enter an order of protection? I believe that if the court finds that the witness making that statement is credible, it's a whole different bag of tricks. In this situation, the court clearly did not find the witness credible. And I think it does hinge on credibility, and the court itself identified this as credible. The issue is, is the trial court obliged to take the testimony of a witness it finds either impeached, discredited, or unreliable for whatever reason, and render judgment based on that information? In other words, is the trial court supposed to be blind to elements, testimony, and facts that don't corroborate the testimony of the petitioner and, in fact, contradict it? Even internally inconsistent testimony between her deposition and her trial testimony and her own witnesses, her friends that came and testified on her behalf. In closing, I think that thrusting this case into the acts of jurisprudence, the statute of jurisprudence, would be a disservice to Illinois law and allow any petitioner, one that is not credited, whose testimony is discredited, is impeached, to be able to seek refuge under the statute. And I think that the judge in weighing the evidence, which is within the promise of the trial court, drawing the negative inferences that she felt she could draw, and interpreting the petitioner's testimony in light of her deposition testimony. I just have a couple questions. Do you think that the trial court imposed more on this petitioner than what would be imposed upon a victim of a sexual assault? I don't think that... What about her comments about the evidence from the hospital, that there really wasn't any corroborative evidence supporting her claim, that the detective had no business testifying about the presence of semen? There were some other things, but that's just one... Yeah, I mean, it was interesting. Her testimony is interesting because she identifies the fact that she has her medical records, but she testifies that she did not look at her medical records, that she never looked at her medical records. I think that that type of response to questions regarding medical evidence... I'm talking about requiring her to supply corroboration. The court suggested that there was no corroborating physical evidence, and that's not what's even required in a criminal sexual assault case. Yeah, I think that... This was a simple proceeding. Yeah, I think the court actually identifies the fact that the issue is not... If we look at the court's order, she defines the issue as whether it was non-consensual penetration, and identifies the fact that the petitioner tried to prove non-consent is what she was trying to prove in the matter. So I think that there was a mention of corroborating medical testimony. I think the court was trying to indicate that the petitioner had put forth certain medical evidence. For example, there were photos taken. There were... What she had to interpret and evaluate, and didn't find that evidence corroborating the petitioner's statement. So I think that that was in response to what the petitioner's case achieved. Thank you, counsel. Mr. Godfrey, a final word. Thank you. Justice Gordon, your question has an explanation. They did move for directed finding. The reason I forgot it was it was two lines, and it's in volume three, page 157. Mr. Macerlian, judge without argument, motion for directed finding. The court, that would be denied. That's why I didn't remember it. There was no extensive argument. It was just denied out of hand. Your Honor's first question, Justice McBride, put the issue on the table. Who contradicted the evidence on lack of consent? The only way you get there is first you've got a disbeliever, and then you have to manufacture evidence that doesn't exist in the record. It's a fundamental gap. And to say that you're weighing the evidence, weighing the evidence is one thing. If Mr. Briseno had testified and said I wasn't there or she consented, she wasn't drunk, the judge looks at both of them and said I weigh the evidence and I find him to be more credible, that's one thing. That's weighing the evidence. We wouldn't be here. That's not what happened. There's no contrary evidence. So if you look at the Brown v. Baker case, the Swell v. Illinois Department of Revenue case, and the SEC case in the Seventh Circuit, all of which stand for the general proposition that And it is legal error not to accept it, not just to manifest weight. When we're complaining about the wrong standard of review applied or wrong burden of proof applied in the circuit court, we're saying that while she mouthed the words preponderance of the evidence, what evidence did she weigh and how did she weigh it? She did not weigh anything on consent. She did not weigh anything on sexual penetration. Did you see any conflict at all in the philosophical approach that you have taken to this case where you argue at one point the unrebutted testimony of this witness and at the other time that they know the standard that would apply in the case of a person who is one who is incapacitated by alcohol? No, not at all. What we're saying is that you're I mean, can you be incapacitated by alcohol for one purpose, that is not being able to give consent and taking consent off the table, and at the same time be capable of credible testimony that doesn't take into consideration your incapacitation? Do you see any conflict at all on those two legal theories? No, not on the facts of this record. Which one was it? She testified that what she remembers is saying no. She also testified that she had had a lot to drink and that she was intoxicated. Those are not inconsistent. Now, you could say, well, maybe she was so intoxicated she doesn't remember correctly, but then she's not really able to. That would be something that somebody might suggest. I'm not saying that you can't argue in the alternative. You certainly can't. But that would seem to me to place the trial judge in a position where the trial judge has to decide whether or not this incapacitation because of an enormous amount of drinking rose to the level of intoxication which took consent off the table. I'm not quite sure what you mean by consent off the table. What I will say is that if the trial judge believed that she was drunk, if she had to reach that conclusion, then legally she could not have consented legally, regardless of her memory. I don't even get there. Our point is you don't even get there. Well, I raise it because there's really a very good brief, an amicus brief, that has been filed. I'm going to compliment them at the end when we're done here. But they don't suggest – I mean, they're really arguing in the alternative, it seems to me, but I'm not at all sure that it's really helpful to argue those two issues in the alternative. First of all, you've got two different standards of proof. But they're not – I mean, the standard of review would be, in the one case, the incapacitation issue would make it a de novo review. Okay? Precisely. Whereas the – The overwhelming evidence in favor of the petitioner's position would make it a manifest way to the evidence review. Not if the court is rejecting the only evidence of record and not weighing evidence. That's why we cite the Baker case. That's why we cite the Illinois Department of Revenue case, that the court did not have the option, it seems to us, of simply saying – But you do understand what I'm driving at. Of course. Of course. You're asking about whether or not there's an internal inconsistency between the legal position and the factual position and the relevant standards of review that would apply to each. We're saying not on the facts of this record, but I understand the academic point that you're making. We don't see that in this case. Okay. Final question that was asked about the – Justice McBride, this was your question in terms of the corroborating evidence, whether the judge implicitly or explicitly was imposing a greater burden on a civil plaintiff as compared to a criminal complainant. And I don't think there's any other way to read the record. The testimony is she says, I had sexual penetration, sexually penetrated me. The judge says, well, I'm going to disregard Gallagher, I'm going to disregard the rape kit, I'm going to disregard that, because you don't have any independent corroborative medical evidence. The statute itself says you don't need that. In rape cases, criminally prosecuted, you don't need that. This court found that wrong. That is an illustration we submit of how she rewrote the statute to improperly weigh the evidence before her. Same with the two drunk to consent. One final point before – unless the court has any other questions. We should not lose sight of the fact on the corroborating evidence of the next day. People do not voluntarily tell their friends that they were raped. People do not voluntarily tell the police that they were raped. People do not voluntarily submit to undergo invasive medical procedures when they weren't raped. People do not voluntarily for the next four weeks get HIV treatments when they're not raped. All that conduct is consistent with non-consensual sexual penetration. And so when you say, well, the court below didn't want to believe her on some things other than that, what was the materiality of those things? The fact that a rape victim who's been traumatized, highly confused, highly upset, and frightened doesn't remember the time she went out for dinner or not, that is not something upon which one rejects her claim. And that not only rejects her claim, but makes an affirmative finding that more likely than not, there was consent. I've read this record twice now to try to find some basis. Because when I come into the public house, I ask myself the question, okay, what's the other side going to say? What are the questions? What's the basis? What is the basis in the record for an affirmative finding of more likely than not consent? That was the basis upon which the petitioner's claim was denied. And I can't find it. One other thing, the 3 a.m. That's a reference to the text that sometime in the early morning hours, there's no pinpoint on the precise time that she recalls when the assault took place, but it was the early morning hours. I don't know the precise time. The record doesn't reflect that. Unless the Court has any further questions, we appreciate the time. That's for reversal. Mr. Godfrey, thank you. Mr. Caccone, again, thank you. I want to note for the record the filing of the amicus brief written by Allegra Rich and Molly Joyce from St. Farth and Shaw on behalf of a group of organizations. It's a very good brief, and the Court appreciates its filing, and it will be considered in part of the record as we consider our deliberations in this case. We're going to take five minutes of short recess.